WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shelton Stewart,<br><br>    Plaintiff,<br><br>v.<br><br>Salt River Project Agricultural Improvement and Power District,<br><br>    Defendant. | No. CV-20-01175-PHX-MTL<br><br>**ORDER** |

Pending before the Court are the parties' cross-motions for summary judgment.[1] (Docs. 41, 46.) Also pending before the Court are Plaintiff Shelton Stewart's two Motions for Sanctions. (Docs. 40, 44.) The Court rules as follows.

**I.**  **BACKGROUND**

Defendant Salt River Project Agriculture Improvement and Power District ("SRP") employed Stewart for a total of twenty-eight years: from July 1989 until he resigned in June 2017. (Doc. 18, First Amended Compl. ("FAC") ¶ 8, Doc. 41 at 2.) At the time he was hired, Stewart had a high school diploma and 56.5 college credit hours. (FAC ¶ 8, Doc. 41-1 at 5.) In 1997, SRP promoted Stewart to senior computer operator—a promotion which Stewart alleges that he only received after he filed an EEOC charge. (FAC ¶ 8.) On July 29, 2016, Stewart requested a raise and another promotion to data center analyst. (FAC ¶ 9.) Stewart alleges that SRP denied his application on two separate occasions and

---

[1] Both parties have fully briefed the issues and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

hired less-qualified Caucasian candidates to fill the position. (FAC ¶¶ 9, 10.) SRP argues, and Stewart acknowledges, that the analyst position requires a bachelor's degree as a prerequisite. (Doc. 41 at 2, Doc. 41-1 at 95.) But Stewart argues that SRP "has a policy of managers advocating for employees seeking promotions without college degrees to get an exception to or waiver of the college degree requirement whenever an employee has work experience." (FAC ¶ 11.) Stewart states that Caucasian employees received waivers to be promoted without the requisite college degrees while he did not. (*Id.*) Stewart alleges that Robert Turner, a Caucasian employee, was promoted from computer operator to data analyst despite his lack of college degree. (FAC ¶ 12.) Likewise, Stewart alleges Shannon Jones was promoted from analyst to desktop manager then to service manager despite not having a college degree. (*Id.*)

Stewart alleged numerous other instances of discrimination, including witnessing the SRP-retiree club ("PERA") hosting an event decorated with confederate flags, being segregated into a training class with the other African American employees, and being excluded from a panel that conducted interviews. (FAC ¶¶ 18, 20, 21.) Stewart filed charges with the EEOC in December 2016, January 2017, and July 2017.[2] (Doc. 41 at 3, Doc. 18-1.) The EEOC issued Right to Sue letters in August 2020. (*Id.*)

Stewart brings claims arising under Title VII and Section 1981 for (1) constructive discharge, (2) disparate treatment based on race, (3) hostile work environment, and (4) retaliation. (FAC at 2.) SRP argues that each of Stewart's claims fail as a matter of law. (Doc. 41 at 3.)

**II.   LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect

---

[2] SRP asserts that Stewart's "two most recent" EEOC charges were filed in December 2016 and January 2017, but neither party provides those documents to the Court.

the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted*); see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding that the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

When, as is the case here, "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal quotations omitted). The summary judgment standard operates differently depending on whether the moving party has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). As the party with the burden of proof, Stewart "must establish beyond controversy every essential element" of his claims based on the undisputed material facts to be entitled to summary judgment. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). SRP, by contrast, must merely establish that Stewart cannot make out a prima facie case considering the undisputed material facts. *Celotex*, 447 U.S. at 322–23.

**III.   DISCUSSION**

    **A.   Stewart's Motion for Summary Judgment**

Stewart filed a motion for summary judgment on June 29, 2021. (Doc. 46.) The Court's deadline for the filing of dispositive motions was May 9, 2021 (Doc. 9), making Stewart's motion more than six weeks late. Stewart agrees that his motion is untimely and informs the Court that he "raises this motion late because of his ignorance and lack of understanding in submitting one's own Summary Judgment because of the lack of counsel and representation." (Doc. 46 at 1.)

A district court has broad discretion in managing its dockets and enforcing its scheduling orders. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Rule 6 provides authority for the Court to, "for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable

neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, Stewart never requested a modification to the scheduling order. As such, the Court will deny Stewart's motion as untimely. *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (holding that a district court properly denied a motion as untimely where it was filed after the applicable scheduling order deadline and the movant "never requested a modification" of the scheduling order), *superseded by statute on other grounds as recognized in Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996).

In any event, the arguments in Stewart's summary judgment motion are repeated elsewhere in his other briefings. (*Compare* Doc. 46 *with* Docs. 40, 44.) Accordingly, the Court will address the substance of his arguments below.

**B.     SRP's Motion for Summary Judgment**

SRP moves for summary judgment on all of Stewart's claims. (Doc. 41 at 1–2.) Stewart brings three claims under 42 U.S.C. § 1981: failure to promote, constructive discharge, and disparate treatment. (Doc. 18 at 3.) These claims are intertwined with his Title VII claims. (*See id.*) SRP argues that these claims, and evidence related to them, are subject to a four-year statute of limitations. (Doc. 41 at 3.)

Section 1981 provides that "all persons within the United States shall have the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). Section 1981 does not specify a statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004). After enacting § 1981, Congress subsequently enacted 28 U.S.C. § 1658, "a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990." *Id.* Thus, "a cause of action arises under an Act of Congress enacted after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Id.* at 382 (alterations and internal quotes omitted).

In 1989, the Supreme Court limited the scope of § 1981 actions generally to claims relating to contract formation. *See Patterson v. McLean Credit Union*, 491 U.S. 164 (1989). In 1991, Congress enacted the Civil Rights Act of 1991, which amended § 1981

- 4 -

to expand the definition of "mak[ing] and enforc[ing] contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  Accordingly, claims involving contract formation are covered by the pre-amendment version of § 1981 and have a two-year limitations period, while claims involving post-contract formation conduct are covered by the 1991 Act and have a four-year limitations period.

Stewart filed his § 1981 claims in June 2020. (Doc. 1.) Accordingly, the Court will consider evidence within four years of that filing date. *Jones*, 541 U.S. at 371.  The Court will analyze these claims with their Title VII counterparts below.  *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003) (explaining that a plaintiff must meet the same standards to prove a § 1981 claim in establishing a Title VII claim).

### 1. Failure to Promote under § 1981

A failure to promote claim is only actionable under § 1981 if the promotion alters the contractual relationship. *Sitgraves v. Allied–Signal, Inc.*, 953 F.2d 570, 574 (9th Cir. 1992); *see also Patterson v. McClean Credit Union*, 491 U.S. 164, 185 (1989) (clarifying the scope of § 1981's original contracts provision).  The Ninth Circuit has defined the "move from a non-supervisory position to a supervisory one" to be a sufficient change in the contractual relationship to be actionable.  Otherwise, for supervisory employees, the court must "compare the supervisory duties, salary, chain of responsibility, and additional responsibilities of each position." *Rodriguez v. Gen. Motors Corp.*, 27 F.3d 396, 400 (9th Cir. 1994).  Here, neither SRP nor Stewart provides any evidence regarding Stewart's job duties as a computer operator or Stewart's desired job duties as an analyst.  Stewart has failed to establish a genuine issue of material fact that the analyst position denied to him would have constituted a new and distinct position with SRP.  Thus, summary judgment is granted for SRP on Stewart's § 1981 failure to promote claim.

### 2. Constructive Discharge

Stewart alleges that the reason for his constructive discharge was SRP's denial of his request to work a three-quarter time schedule, which he says was necessary to care for

his ailing parents. (Doc. 51 at 8.) Stewart claims SRP denied his request, so his "only option" was "to seek employment elsewhere." (*Id.*) SRP counters that Stewart began working at another company before he resigned, so SRP is entitled to summary judgment. (Doc. 41 at 3.)

Constructive discharge occurs when the discriminatory working conditions are so egregious that a reasonable employee in the plaintiff's position would feel compelled to resign. *See Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004); *see also Watson v. Nationwide Ins., Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (constructive discharge exists where a working environment is "so intolerable and discriminatory as to justify a reasonable employee's decision [to leave]").

The determination of whether working conditions are so egregious to support a constructive discharge theory is usually reserved for the jury. *See Watson*, 823 F.2d at 631; *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). But here, Stewart's denied request to work a three-quarter schedule fails to state a constructive discharge claim as a matter of law. Both parties agree that Stewart was allowed to take a month of vacation. (Doc. 41-1 at 19.) Stewart testified during his deposition that he accepted his job at Apple before resigned, and he took vacation time from SRP "because of the harassment, because of the hostility, and also to evaluate Apple [to see if] that's something [he] wanted to change careers to." (Doc. 41-1 at 14, 18.) Even construing the evidence in the light most favorable to Stewart, a reasonable trier of fact could not find that the denial of Stewart's request to work three-quarter time, particularly given SRP's flexibility during his full month off, is not "so intolerable that a reasonable person would leave the job." *Brooks*, 229 F.3d at 930.

### 3. Disparate Treatment

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Systems, Inc.*,

510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). "A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of race." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (internal quotation marks and citations omitted). To prove discrimination and defeat summary judgment, a plaintiff may show direct evidence of discrimination or circumstantial evidence of discrimination. Direct evidence of discrimination is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Enlow v. Salem–Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004)

In contrast, a plaintiff may also show discrimination via circumstantial evidence, which is analyzed under the *McDonnell Douglas* framework. *See Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under the *McDonnell Douglas* framework, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. 411 U.S. at 802. Upon this showing, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* If the employer does so, the plaintiff must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). On summary judgment for at Title VII claim, the required degree of proof "is minimal." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Stewart raises several instances of disparate treatment in his briefings, but none set forth a prima facie case of racial discrimination. Therefore, the Court will grant summary

judgment for SRP on this claim.

### i. Promotion

Stewart alleges that he was not promoted to the data center analyst position in 2016, even though he applied for the job and had been performing the job duties "for years without extra compensation." (Doc. 18 ¶ 9.) SRP argues that Stewart was not qualified for the analyst position because he did not have a bachelor's degree. (Doc. 41 at 5.) SRP also argues that Stewart cannot show that similarly situated individuals were treated more favorably. (Doc. 50 at 10–11.) SRP does not contest the other elements of the prima facie case.

The parties do not dispute that a bachelor's degree is usually required for the position of analyst. (Doc. 41 at 2, Doc. 41-1 at 95.) And the parties also do not dispute that the candidate selected for the analyst position in 2016 satisfied the bachelor's degree requirement and was not in need of a waiver. (Doc. 41-1 at 24.) Instead, Stewart argues that he should have been granted a waiver of the educational requirement. (Doc. 48 at 6.) Stewart argues that several others—Mr. Jones, Mr. Turner and Mr. Vaita—were promoted with educational waivers within the IT Department and bypassed the college degree requirement. (Doc. 48 at 6, Doc. 51 at 6.)

Stewart's evidence is insufficient to show that SRP treated him "differently than a similarly situated employee who does not belong to the same protected class." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). An individual seeking relief under Title VII must demonstrate that they are "similarly situated . . . in all material respects" to the employees that are receiving more favorable treatment. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Stewart claims that Mr. Jones was promoted with an educational waiver but provides no support for this assertion—in fact, he fails to provide *any* admissible evidence that would show that Mr. Jones was similarly situated, belongs to the same class, and was promoted to the position of analyst with an educational waiver despite a lack of college degree. Likewise, Stewart claims that Mr. Turner was promoted to the position of IT shift analyst in 1993. (Doc. 48-1 at 3, 5.) Stewart alleges that he

1  "shared the same identical job" as "the white candidate" who was "waivered to the next
2  career level as an IT Analyst within 6 months of hire versus the black candidate [who]
3  never got the chance to be waivered at all." (Doc. 48 at 3, *see also* Doc. 51 at 5.)  Besides
4  the fact of his job change to shift analyst (Doc. 48 at 5), Stewart does not provide admissible
5  evidence regarding Mr. Turner, including the circumstances of his promotion and whether
6  or not he had a bachelor's degree.  Stewart concludes "[t]his information is sufficient in
7  declaring the intent and action of management in promoting Mr. Turner." (Doc. 51 at 5.)
8  But the Court is unable to make the necessary comparisons based on the information in the
9  record.  *See Selig*, 447 F.3d at 755.

10  Finally, regarding Mr. Vaita, both parties agree that he was converted from a
11  contractor to an SRP employee IT analyst.  (Doc. 51 at 6, Doc. 41 at 6.)  In contrast, it is
12  uncontested that Stewart was not subject to the same "contractor conversion" rules which
13  allowed Mr. Vaita to waive past the bachelor's degree requirement.  (Doc. 41 at 5.)  As
14  such, Mr. Vaita is not "similarly situated . . . in all material respects." *Moran*, 447 F.3d at
15  755.  Therefore, Stewart has failed to satisfy the fourth prong in his prima facie case under
16  Title VII.  And even if he were similarly situated, Stewart fails to carry his burden under
17  the *McDonnell Douglas* framework of showing that SRP's reason for promoting Mr. Vaita
18  was pretextual.  SRP states Mr. Vaita was converted from a contractor to regular employee
19  in 2012, and during the conversion, his job title changed from production control analyst
20  to computer operations analyst.  (*Id.* at 6.)  To carry his burden, Stewart can prove pretext
21  indirectly, by showing this explanation is "unworthy of credence;" or directly, by showing
22  unlawful discrimination motivated the employer.  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d
23  1217, 1220–22 (9th Cir. 1998).  Stewart does neither.  (*See* Doc. 48 at 5–6.)  Therefore,
24  Stewart's evidence is insufficient to establish a claim of disparate treatment as to
25  promotional practices.

26             **ii.**      **Scheduling**

27  Stewart next contends that Kurt K. Kammerer requested a schedule change to avoid
28  working weekends, but Mr. Stewart's similar request was denied.  (Doc. 51 at 5.)  As the

nonmoving party, Stewart must produce evidence via affidavit or other appropriate means of illustrating "specific facts showing there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 325. Here, Stewart bears the burden of producing some "significant probative evidence tending to support the complaint." *Id.* But the record is devoid of any evidence to support Stewart's disparate treatment claim. (*See* Doc. 51.) In fact, the *only* evidence that Stewart submits that references Mr. Kammerer is that in 1995, Stewart was "cursed out" by Mr. Kammerer, which has nothing to do with the schedule. (Doc. 51 at 16.) Accordingly, the Court finds no dispute as to any material fact here.

### iii. Miscellaneous

In his complaint, Stewart alleges several instances of disparate treatment, including a training class, intern outline, and an interview panel held by the department. (FAC ¶¶ 16, 17, 19.) Stewart does not mention these instances of disparate treatment in his response to SRP's motion for summary judgment (Doc. 48) and otherwise appears to abandon these allegations. Generally, when a plaintiff fails to respond to a motion for summary judgment with sufficient evidence to support his claims, that plaintiff has failed to meet his burden of showing the existence of a genuine issue of material fact, and therefore summary judgment is properly granted to the defendant. *T.W. Elec. Service v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Accordingly, the Court grants summary judgment for SRP on Stewart's disparate treatment allegations stemming from the training class, intern outline, and the interview panel.

### 4. Hostile work environment

To prove a hostile work environment claim under Title VII, the employee must raise a triable issue of fact as to whether "(1) the defendants subjected [him] to verbal or physical conduct based on [his] race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Surrell v. Calif. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). Moreover, there is a subjective component to the test: "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually

altered the conditions of the victim's employment, and there is no Title VII violation." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). Conduct is only actionable when a reasonable person would find it hostile or abusive. *Id.* at 21. To determine whether an environment is sufficiently hostile or abusive to state an actionable claim, courts look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (internal quotations omitted). While "simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim under Title VII . . . the harassment need not be so severe as to cause diagnosed psychological injury." *Fuller v. Idaho Dept. of Corr.*, 865 F.3d 1154, 1161–62 (9th Cir. 2017).

Stewart asserts he felt "threatened and uncomfortable in utilizing SRP's employee recreation center" after observing the PERA club use the space for "honoring confederate soldier Jack Swilling"; he was the target of "sexual harassment by [his] manager";[3] he was "ridiculed in class because of race, bullied by management and coworkers"; and finally, both management and peers "circulated racial pictures and jokes." (Doc. 48 at 8, Doc. 51 at 3–4.) SRP argues that Stewart's allegations are not sufficiently severe or pervasive to state a claim. (Doc. 41 at 11, 49 at 7–8.)

First, SRP does not dispute that Stewart observed the PERA club hosting an event decorated with confederate flags. (Doc 41 at 11.) SRP's argument is that the PERA club is "a separate legal entity that provides recreational facilities which SRP employees and retirees (and their guests) may use for their own private events." (*Id.*) In determining whether two or more nominally separate entities should be treated as one employer for

---

[3] Stewart did not allege sexual harassment in his Complaint, and his claims of sexual harassment are asserted for the first time in his reply brief. (Doc. 51 at 3.) "It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011) (quoting *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007)). The Court declines to consider Stewart's sexual harassment allegations in the instant case.

purposes of Title VII, the Ninth Circuit uses a four-part factor test. *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1213 (9th Cir. 1989). These factors are the "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control." *Herman v. United Broth. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1383 (9th Cir. 1995). It is the plaintiff's burden to show the existence of the four factors. *See Morgan*, 884 F.2d at 1213 (holding plaintiff "failed to present evidence sufficient to create a genuine issue of material fact whether [defendants] should be consolidated for title VII purposes"); *Mel O v. Flynn Grp., Inc.*, No. 216CV1712JCMNJK, 2018 WL 2284373, at *4 (D. Nev. Feb. 2, 2018) (granting summary judgment for defendant because the plaintiff failed to make an adequate showing on three of the four factors and failed to name one of the entities as a defendant).

The only evidence that Stewart provides is that two of the PERA club directors were involved in litigation against him. (Doc. 48-1 at 38.) While this evidence may go toward the second factor—common management—Stewart does not provide any evidence regarding the remaining factors, and as such, has not created a genuine dispute of material fact regarding SRP's liability for the PERA club's actions. Moreover, Stewart failed to name the PERA club as a defendant in this case. (*See* FAC.)

The remainder of Stewart's evidence and claims are too isolated to demonstrate that the work environment was both objectively and subjectively hostile. *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001). To determine whether an environment is hostile, the Court considers the entirety of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment." *Best v. California Dept. of Corrections*, 21 Fed. Appx. 553, 556 (9th Cir. 2001). The Supreme Court has held that the "conduct must be extreme to amount to a change in the terms and

conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Stewart claims he was "[v]erbally abused" by coworker Mr. Kammerer in 1995. (Doc. 51 at 3, 16.) Stewart also submits two images that were posted on the work bulletin board that used ape imagery that Stewart alleges were designed to "resemble, mock and racially harass the Plaintiff." (Doc. 51 at 14, 17–18.) Stewart states the first picture was posted "shortly . . . after the decision of the trial" in his 2001 case. (*Id.* at 14.) He does not provide a date for the second picture. (*Id.* at 17–18.) He also claims he was "ridiculed in class because of race [and] bullied by management and coworkers." (Doc. 51 at 3–4.) Again, Stewart does not provide a date or specifics regarding these allegations. (*Id.*) These two images, a verbal outburst by a coworker in 1995, and non-specified instances of bullying are infrequent in view of Stewart's 27-year career with SRP. (Doc. 18-1.) *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1118 (9th Cir. 2004) (denying summary judgment where a plaintiff presented evidence that "several racial incidents occurred each year" for ten to fifteen years, ranging in severity).

### 5. Retaliation

"To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The plaintiff must show that his protected activity was "a but-for cause" of the employer's adverse action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Stewart alleges that SRP retaliated against him for "having protested discrimination," which resulted in "20 years of working weekends." (Doc. 18 at 2, Doc. 51 at 3, Doc. 48 at 8.) But Stewart has not provided *any* evidence besides his own complaint that his assigned weekend schedule was due to his EEOC filings, and thus, fails to show a causal link between the protected activity and the adverse employment action. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (dismissing a retaliation claim because the employee "failed to show a causal link"). Therefore, the Court cannot

infer a "but for" cause between the weekend work schedule and Stewart's EEOC charge history. *Nassar*, 570 U.S. at 362. Stewart also alleges that SRP retaliated against him by preventing him from interviewing for the analyst job. (Doc. 48 at 8.) Again, Stewart fails to show a causal link between his EEOC filings and his non-selection for an interview, so his retaliation claim fails. The Court grants summary judgment for Defendants on this claim.

### C. Motions for Sanctions

Stewart filed two Motions for Sanctions. (Docs. 40, 44.) Stewart requests sanctions against SRP for "violations of Title VII and perjury" (Doc. 40) and "violations of Title VII and Executive Order 11246" (Doc. 44).

Stewart's Title VII arguments have been addressed above. Stewart requests sanctions against SRP for "perjury" and "obstruction of justice." But perjury under Arizona law is a crime, and no private cause of action is provided. *See* A.R.S. § 13-2702; *Harris v. Dillinger*, No. CV-17-00498-TUC-DCB, 2017 WL 6819931, at *2 (D. Ariz. Nov. 9, 2017). Likewise, there is no private right of action for violation of the federal perjury statute. 18 U.S.C. § 1621; *Schulstrom v. Schulstrom*, No. 3:14-CV-00791-SI, 2014 WL 3479018, at *3 (D. Or. July 11, 2014). Therefore, Stewart cannot sue SRP for perjury. Similarly, no private right of action exists for Stewart's "obstruction of justice" claim. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980) (criminal statutes "provide no basis for civil liability"); *Najarro v. Wollman*, No. C 12-1925 PJH, 2012 WL 1945502, at *3 (N.D. Cal. May 30, 2012) (dismissing "obstruction of justice" as the basis for civil liability by a private citizen).

Next, Stewart requests the Court sanction SRP for violating Executive Order 11246. Stewart asserts that, SRP declared "no affirmative action plan pursuant to Executive Order 11246 exists." (Doc. 40 at 2.) Stewart argues that (1) SRP is required to have an affirmative action plan pursuant to Executive Order 11246, (2) SRP's statement that it does not have one "was preying on [his] ignorance," and (3) SRP did in fact have an affirmative action plan. (Doc. 40 at 2.) SRP argues that it does not have an Affirmative Action Plan

because it is a political subdivision. (Doc. 49 at 11.)

Among other exemptions, 41 C.F.R. § 60-1.5 exempts "any agency, instrumentality, or subdivision" of State or local government from "maintaining a written affirmative action compliance program." 41 C.F.R. § 60-1.5(a)(4). SRP is a political subdivision of the state. *See Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 432 F. Supp. 3d 1070, 1077 (D. Ariz. 2020), aff'd in part, rev'd in part and remanded, No. 20-15301, 2022 WL 276031 (9th Cir. Jan. 31, 2022). Therefore, SRP falls under the 41 C.F.R. § 60-1.5 exemption and does not need to maintain an affirmative action plan. Stewart's request for sanctions is denied.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED denying** Plaintiff Shelton Stewart's Motion for Sanctions (Doc. 40).

**IT IS FURTHER ORDERED granting** Defendant Salt River Project Agricultural Improvement and Power District's Motion for Summary Judgment (Doc. 41).

**IT IS FURTHER ORDERED denying** Plaintiff Shelton Stewart's Second Motion for Sanctions (Doc. 44).

**IT IS FURTHER ORDERED denying** Plaintiff Shelton Stewart's Motion for Summary Judgment (Doc. 46).

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant Salt River Project Agricultural Improvement and Power District and against Plaintiff Shelton Stewart. The Clerk of Court shall close this case.

Dated this 23rd day of February, 2022.

Michael T. Liburdi
United States District Judge